UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  07-20293-CIV-SEITZ/MCALILEY

SM LICENSING CORP.,

    Plaintiff/Counter-Defendant,

v.

U.S. MEDICAL CARE HOLDINGS
LLC and DR. SASSON MOULAVI,

    Defendants/Counter-Plaintiffs,

v.

DR. SANFORD SIEGAL,

    Third Party Defendant.
_____/

**ORDER IMPLEMENTING PRELIMINARY
INJUNCTION, SETTING INJUNCTION BOND AND
PRECLUDING DEFENDANTS FROM USING
<u>PREFERRED SUBSTITUTE TRADEMARK</u>**

On July 13, 2007, this Court entered a preliminary injunction barring Defendants from using the trademark Cookie Diet, or any confusingly similar trademark, in connection with their weight management services and products.  [DE 98].  At the conclusion of that order, the Court directed the parties to confer and attempt to reach agreement on (1) a time frame for Defendants to phase out their use of the Cookie Diet trademark, and (2) whether, pursuant to Fed. R. Civ. P. 65(c), Plaintiff should post an injunction bond and, if so, the amount of that bond.  The order further provided that the preliminary injunction would not take effect until

the Court considered a joint status report filed by the parties addressing these two matters and issued a further order setting forth a timetable for Defendants' full compliance and establishing the amount of an injunction bond.

The parties filed a Joint Status Report that documents their considerable agreement on a timetable for Defendants' phase-out of the Cookie Diet trademark [DE 99], and the Court commends them for this effort. The status report also identifies three areas of disagreement: (1) the phase-out schedule for Defendants to remove the Cookie Diet trademark from their outdoor signs and those of their franchisees, (2) when the phase-out period should begin to run, and (3) the amount of Plaintiff's injunction bond. The Court has carefully reviewed memoranda filed by both parties that express their positions on these disputed issues [DE 100, 101, 102, 103], and resolves the disputes with the following orders.

## I.   Substitute for Cookie Diet

Defendants wish to use the phrase "Cookie Weight Loss Program" or "Weight Loss Cookie" in place of Cookie Diet, and ask this Court to advise whether this is prohibited by the Preliminary Injunction. [DE 100, pp. 5-7]. Plaintiff opposes Defendants' use of these substitute marks. [DE 101, p. 4].

Defendants argue that Plaintiff's right to use the trademark Cookie Diet does not give it the right to exclude others from using the words Cookie and Diet, or from using the word Cookie with "any other words that evoke the context of weight loss." [DE 100, p. 7]. Defendants are correct to a point: the preliminary injunction certainly does not recognize

Plaintiff to have rights to the words Cookie and Diet, alone, or in combination with any other words. It does, however, clearly recognize Plaintiff's priority over the trademark Cookie Diet, and any confusingly similar name, in connection with the sale of weight loss products and services. Defendants' proposed substitutions, which pair the word Cookie with a synonym for the word Diet, that is "Weight Loss" or "Weight Loss Program," invite confusion. These proposed substitutions are barred by the Preliminary Injunction.

The only legal authority cited by Defendants in support of their proposed substitutions is *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355 (11th Cir. 1997). The plaintiff there registered the trademark Lone Star Cafe in 1981, and claimed it should have prevailed on its trademark infringement claim against the defendant for its use of the trademark Lone Star Steaks, registered in Georgia in 1984. The plaintiff argued that the words "Lone Star" were the dominant, identifying features of both parties' marks, and urged that when determining priority and infringement, the court should focus on which party first developed the rights to the words "Lone Star," without regard to the accompanying generic words (there, "steaks" and "cafe"). 106 F.3d at 361. The Eleventh Circuit rejected this argument and affirmed the district court's issuance of a permanent injunction in favor of the defendant. The Court observed, "[i]n determining whether a composite mark such as LONE STAR CAFE is entitled to protection, courts do not assess the individual parts of the name. Instead, the validity of a composite mark is determined by looking at the mark as a whole." 106 F. 3d at 362 (citations omitted). The Eleventh Circuit further stated: "The

district court properly concluded that the validity of Plaintiff's LONE STAR CAFE mark is to be determined by viewing the trademark as a whole and not just the words 'Lone Star[,]'" *id.*, and affirmed that the plaintiff was not entitled to priority over the descriptive words "Lone Star."[1]

When this Court looks at the composite mark Cookie Diet as a whole, and does the same for Defendants' proposed substitute composite marks, it concludes that one is simply a restatement of the other, and that Plaintiff's and Defendants' parallel use of these marks would lead to confusion among consumers. Therefore, the Preliminary Injunction bars Defendants from use of their proposed substitute marks.

**II.     Defendants' phase-out periods begin on the date Plaintiff posts a bond**

The Court hereby ADOPTS the agreed time frames for Defendants to phase out their use of the Cookie Diet trademark that are set out in the parties' Joint Status Report [DE 99, § I(A)], and orders that those time frames will begin to run on the day Plaintiff posts the injunction bond required by this order.

**The Court will not consider further requests by the Defendants that it approve any other trademark substitutions and therefore will not toll any of these deadlines for this purpose.**

   **A.     Defendants' phase-out of outdoor signs**

Defendants ask for 24 weeks to eliminate Cookie Diet from their outdoor signs, and

---

[1] The *Lone Star* decision was modified on rehearing on other grounds, 122 F.3d 1379 (11th Cir. 1997).

those of their franchisees, which they estimate is the time needed to secure permits. [DE 100, Ex. A, Moulavi Aff., ¶ 7]. Defendants have not presented any particular information to the Court to support these estimates.[2] Plaintiff responds that the Preliminary Injunction simply requires Defendants to remove a portion of their signs, and that three months should be ample time to do so. [DE 101, p. 2]. In the absence of a record to support the 24 weeks sought by Defendants, they shall have three months to bring their outdoor signs in compliance with the Preliminary Injunction.

### III.   Plaintiff shall post a $400,000 injunction bond

The parties agree that this Court should order Plaintiff to post an injunction bond, but disagree as to the appropriate about of that bond: Plaintiff endorses a bond between $85,000 and $125,000, while Defendants seek a bond in the amount of $2,195,183. In support of their position Defendants have filed the affidavit of Dr. Moulavi, and accompanying spreadsheet, that simply asserts estimates of the costs and damages Defendants contend will flow from the preliminary injunction. [DE 100, Ex. A]. Defendants do not provide any documentary support for their numbers.

Defendants identify four categories of costs or damages they believe an injunction bond should protect against. The first category is the cost of replacing inventory, and of lost inventory, which Defendants value at $475,183. In their spreadsheet Defendants attempt to

---

[2] The Court believes the only evidence before it is photographs of outdoor signs that Defendants introduced into evidence at the preliminary injunction hearing. [Def. Ex. 58]. The Court does not know, however, whether these signs are still in place or if they are typical of the outdoor signs the Defendants need to modify.

break down these costs but, as already noted, provide no evidence to substantiate their estimates. This is particularly troubling for the larger estimates, such as the $100,000 cost of "Ad Agency Materials."

The second category of Defendants' asserted damages is the diminished value of the Cookie Diet trademark caused by Plaintiff's failure to police other infringers, a damage Defendants value at $500,000 a year. Defendants make specific reference to the owners of a "Hollywood Cookie Diet" who they claim are currently infringing the mark. Defendants' hands are tied by the preliminary injunction and they assume Plaintiff will take no legal action to stop this infringement, leading to a loss of market share and other diminution of the Cookie Diet trademark. These damages are highly speculative. Moreover, the Court knows of no legal authority for the proposition that damages caused by a third-party infringer are appropriate for an injunction bond.

Defendants report that a number of their franchisees have expressed concern about their loss of use of the Cookie Diet trademark and have threatened to withhold royalties or institute legal action against Defendant U.S. Medical Care Holdings LLC. If this comes to pass, Defendants estimate a loss in the next year of $720,000 in royalty payments, and $500,000 in expenses trying to replace their franchisees in strategic locations. Again, these final two categories of damages are highly speculative and are presented without any evidentiary support.

The amount of an injunction bond is within the sound discretion of the district court.

*Bellsouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005); *Carillon Importers, LTD v. Frank Pesce Int'l Group, Ltd.,* 112 F.3d 1125, 1127 (11th Cir. 1997). On this record the Court finds that an injunction bond in the amount of $400,000 is reasonable, and ORDERS Plaintiff to post a bond in that amount **no later than August 13, 2007**. Defendants' obligation to terminate its use of the Cookie Diet, consistent with the phase-out schedule adopted by this order, will begin on the date Plaintiff posts this injunction bond.

DONE AND ORDERED in chambers at Miami, Florida this 3rd day of August, 2007.

_____
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Patricia A. Seitz
All counsel of record